UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------
RENATO PISTOLESI, ALLTOW, INC., and
ACTION AUTOMOTIVE COLLISION
AND MECHANICAL, INC.,

         **Plaintiffs,**

                                7:11 Civ. 5598 (MEA)
     - against -                       **MEMORANDUM AND OPINION**

CARL CALABRESE, individually, et al.,

         **Defendants.**
-------------------------------------------------------------

**MARVIN E. ASPEN**, United States District Judge:

      This case is currently scheduled to go to trial on May 4, 2015,[1] but first we must address the parties' cross-motions regarding Plaintiff Action Automotive Collision and Mechanical, Inc.'s ("Action") second claim, which alleges federal preemption of three local towing laws. On January 7, 2015, Judge Seibel issued an oral ruling on Defendants' motion for summary judgment, leaving only claims two and four remaining in the case. (1/7/15 Hr'g Tr.) Judge Seibel noted that claim two appeared to be a legal issue inappropriate for trial, but neither party had moved for summary judgment on the claim. (*Id.* at 39.) She ordered the parties to file letter briefs explaining what should be done with claim two by January 26, 2015. (*Id.* at 41.) In the requested briefs, Defendants argue that claim two should be dismissed entirely, while Plaintiffs ask the Court to enter judgment in favor of Action. The case was reassigned to this Court on January 13, 2015. For the reasons discussed below, claim two is dismissed as to two of the three challenged regulations, and judgment is entered in favor of Action as to the third.

---

[1] There are currently three cases on the Court's May 4, 2015 trial calendar. We are informing the parties that this case is currently third on the Court's schedule for this May visit. The parties should be prepared to proceed with trial as scheduled on May 4, 2015 if the first two scheduled trials settle.

1

**BACKGROUND**

Plaintiffs Alltow, Inc. ("Alltow") and Action originally filed a six-count complaint against Defendants, alleging various Constitutional and statutory claims. After Judge Seibel decided Defendants' motion to dismiss and motion for summary judgment, the only claims remaining are two and four. Claim two is brought by Action against the Village of Wappingers Falls ("the Village"), the Village's Mayor, Matthew Alexander ("Alexander"), and three members of the Village Board of Trustees ("the Board"), Paul Italiano ("Italiano"), Alan Weitlich ("Weitlich"), and John Visentin ("Visentin"). Claim four, which is a statutory retaliation claim not directly relevant to the issues here, is brought by Alltow against the Village and the Village's Police Commissioner, Carl Calabrese ("Calabrese").

Action and Alltow are both towing and auto repair companies owned or partly-owned by Renato Pistolesi ("Pistolesi").[2] (Pls' Br. at 2; Defs' SOF ¶ 1, Dkt. 118.) The companies are located on the same property, which is within the Village boundaries. (Pls' Br. at 2.) The parties agree that Alltow was placed on the Village Police Department's Rotational Tow List ("the Tow List") in 2007 and Action was added to the list in 2008. (Pls' Br. at 2; Defs' SOF ¶ 5, 7–8.) The Tow List is maintained by the Village Police Department as a way to distribute work to registered tow companies when there is an accident or when the police need to impound a car. (Pls' Br. at 2.) The Police Department rotates through the companies on the Tow List, calling each once before starting over. On August, 13, 2008, after a fairly short tenure on the Tow List, the Board voted to remove Action from the list. (Pls' Br. at 2; Defs' SOF ¶ 9.)

Defendants contend that the Board removed Action from the Tow List because it was unfair that Pistolesi owned two companies on the list while other owners only owned one.

---

[2] Pistolesi voluntarily withdrew his individual capacity claims. (*See* 1/7/15 Hr'g Tr. at 3.)

2

(Defs' Br. at 6–7.)  In support of Defendants' summary judgment motion, Visentin, who attended the August 2008 board meeting, stated in an affidavit that he believed it was unfair for Pistolesi to have two companies on the list, and that Action was removed as "a matter of fairness, common sense, and the best interests of the Village."  (Aff. of John Visentin, Dkt. 110-15; *see also* Aff. of Louis Viglotti, Esq., Dkt. 110-14.)  Likewise, the then Police Chief Commissioner Charles Ferry ("Ferry") testified that he and the Board members believed it was unfair for both Action and Alltow to be on the Tow List at the same time, and that he thought it was contrary to the best administration of the list.  (Charles Ferry Dep. at 41–44, Dkt. 110-9.)

At some point shortly after Action was removed, the Board authorized Ferry to issue new requirements for acceptance to the Tow List.  (Pls' SOF ¶ 16, Dkt. 116; Defs' SOF ¶¶ 10–11.)  Three of those requirements are relevant here:

> 1.  The business and storage area must be at an actual business located in the Village.  Storage area must be adequately secured to protect vehicles. [("Requirement 1")]
>
> \*       \*       \*
>
> 3.  Trucks used for the rotational list must be garaged and dispatched from no further than 2 roadway miles from the Village of Wappingers Falls as indicated by a GPS device placed at the closest access point to the business from the village. [("Requirement 3")]
>
> 4.  Applicants shall not qualify if they maintain a business on the very same premises or real property owned or operated by another Tow Rotation Service. [("Requirement 4")]

(Old Tow List Requirements, Dkt. 114-12.)  Ferry testified that Requirement 4 was enacted in response to Action being placed on the Tow List.  (Ferry Dep. at 33–34; Viglotti Aff. ¶ 4.)  Requirements 1 and 3 appear to have targeted two other tow companies that were on the list at the time—Marty's Towing and Dutchess Towing.  (*See* Ferry Dep. at 35–36, 39; Defs' SOF ¶ 16.)  The parties seem to agree that Action and Alltow satisfy Requirements 1 and 3.

3

**DISCUSSION**

In claim two, Action alleges that Requirements 1, 3 and 4 are preempted by 49 U.S.C. § 14501(c)(1). (Compl. ¶ 21–23.) In their brief to the Court, Plaintiffs asked us to grant injunctive relief and enter declaratory judgment finding that the Requirements are preempted by federal law.[3] Defendants ask that we dismiss the claim, arguing that: (1) Plaintiffs do not have standing with respect to Requirements 1 and 3; (2) Requirement 4 is not preempted by 49 U.S.C. § 14501(c)(1); and (3) if Requirement 4 is preempted, it should be severed from the rest of the Tow List Requirements.

**I.      Standing**

Defendants argue that Action does not have standing to bring its preemption claim with respect to Requirements 1 and 3 because those laws have not caused Action any actual or imminent injury-in-fact. (Defs' Br. at 3–4.) A plaintiff's standing to sue is a prerequisite to our subject matter jurisdiction under Article III of the United States Constitution. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992); *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 104 (2d Cir. 2013). Parties may move to dismiss a claim for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and even absent a party motion, Rule 12(h)(3) requires us to dismiss claims where we lack subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

To establish Article III standing, a plaintiff must show: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable

---

[3] It is not entirely clear whether Plaintiffs are seeking judgment on all three Regulations, since their brief discusses the substance of only Regulation 4. For completeness, we will assume they are seeking injunctive relief and declaratory judgment on all three.

decision." *Pac. Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 350 (2d Cir. 2008) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81, 120 S. Ct. 693, 704 (2000)); *see Liberty Mut. Ins. Co. v. Donegan*, 746 F.3d 497, 502 (2d Cir. 2014).

To establish an injury in fact, the plaintiff must allege an injury that is personal to him, and he cannot bring claims related exclusively to injuries suffered by other entities or individuals. *L.A.M. Recovery, Inc. v. Dep't of Consumer Affairs*, 184 F. App'x 85, 88 (2d Cir. 2006) ("[A plaintiff] generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." (quoting *Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 2205 (1975))); *see Vermont Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 382 (2d Cir. 2000). When a plaintiff seeks to challenge a statute or regulation, he must, at a minimum, establish "an actual and well-founded fear that the law will be enforced against" him. *Vermont*, 221 F.3d at 382 (quoting *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393, 108 S. Ct. 636, 643 (1988)); *see also Donegan*, 746 F.3d at 502 (finding plaintiff had standing to bring preemption claim where it would suffer an injury-in-fact from defendant's regulation); *Exec. Transp. Sys. LLC v. Louisville Reg'l Airport Auth.*, 678 F. Supp. 2d 498, 508 (W.D. Ky. 2010) (finding plaintiff did not have standing to bring preemption challenge under 49 U.S.C. § 14501(c)(1) where there was little evidence that the local regulation prevented him from engaging in the federally regulated activity). Whether a plaintiff has standing to sue is a question of law. *In re Methyl*, 725 F.3d at 105.

In Plaintiffs' complaint, Action alleges that Requirements 1, 3 and 4 targeted Plaintiffs "as well as tow companies outside the area," and that Requirement 4 was specifically directed at Action and Alltow. (Compl. ¶ 22). It is undisputed that Requirement 4 precludes Action and Alltow from participating in the Tow List simultaneously, and thus Action has standing to

5

challenge the enforcement of that requirement.  Conversely, Action has not alleged that Requirements 1 or 3 harmed the company, or will harm the company, in any way.  (*See* 1/7/15 Hr'g Tr. at 24–25.)  Indeed, since Action appears to be in compliance with Requirements 1 and 3—neither party has argued otherwise—the company could not plausibly claim a fear that the Village would enforce those Requirements against it in the future.  *Vermont*, 221 F.3d at 382.  To the extent Action seeks to challenge Requirements 1 and 3 on behalf of other towing companies, it cannot do so since individual plaintiffs have standing to assert only their own legal rights and interests.  *L.A.M. Recovery*, 184 F. App'x at 88.  Action has not established a personal injury-in-fact related to Requirements 1 and 3, thus it does not have standing to challenge those requirements.  Accordingly, claim two is dismissed as to Requirements 1 and 3.

## II.     Federal Preemption of Requirement 4

Defendants next argue that claim two should also be dismissed as to Requirement 4 because it is not preempted by 49 U.S.C. § 14501(c)(1), while Plaintiffs assert that it is.  Neither party addressed the standard of review that we should use to resolve this issue.  Since we are deciding dispositive issues before trial, we will treat the parties' arguments as cross-motions for summary judgment.  *See Loyal Tire & Auto Center, Inc. v. Town of Woodbury*, 445 F.3d 126, 148 (2d Cir. 2006) (applying the summary judgment standard to determine that local towing regulations were preempted by 49 U.S.C. § 14501(c)(1)).[4]

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine

---

[4] We also recognize that federal courts have broad discretion to decide whether or not to issue a declaratory judgment.  *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003).  This does not change the standard of review that courts apply to resolve the merits of the substantive dispute.  *See Cmty. Bank of Sullivan Cnty. v. First Nat. Bank of Jeffersonville*, 125 F. Supp. 2d 659, 663 n.1 (S.D.N.Y. 2000) (applying the standard of review for the underlying substantive law to determine whether plaintiff was entitled to declaratory judgment).

issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). This standard places the initial burden on the moving party to identify those portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations omitted). Once the moving party meets this burden of production, the nonmoving party "must go beyond the pleadings" and identify portions of the record demonstrating that a material fact is genuinely disputed. *Id.*; Fed. R. Civ. P. 56(c). In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true, and draw all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513.

In 1994, Congress preempted state regulation of certain aspects of trucking with the Federal Aviation Administration Authorization Act ("FAAAA"), later amended by the Interstate Commerce Commission Termination Act of 1995. The overarching goal of the FAAAA was to ensure that transportation rates, routes, and services reflect the "maximum reliance on competitive market forces." *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 371–72, 128 S. Ct. 989, 995 (2008); *see Dan's City Used Cars, Inc. v. Pelkey*, 133 S. Ct. 1769, 1780 (2013). Under 49 U.S.C. § 14501(c)(1), state governments may not enact or enforce regulations "related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property." This provision expresses "a broad pre-emptive purpose." *Rowe*, 552 U.S. at 370, 128 S. Ct. at 995. It preempts local laws "having a connection with, or reference to" the rates, routes, or services of motor carriers' transportation of property, even if such connection "is only indirect." *Id.* (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384–86, 112 S. Ct. 2031, 2037–38 (1992)); *see Pelkey*,

133 S. Ct. at 1778–79 (emphasizing that the law must concern a motor carriers' "transportation of property"). "[I]t makes no difference whether a state law is 'consistent' or 'inconsistent' with federal regulation, . . . pre-emption occurs at least where state laws have a 'significant impact' related to Congress' deregulatory and pre-emption-related objectives." *Id.* (quoting *Morales*, 504 U.S. at 386–87, 90, 112 S. Ct. at 2038). The statute does include a number of express exemptions to preemption, including that the provision "shall not restrict the safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. § 14501(c)(2)(A).

Plaintiffs assert that under *Loyal Tire*, which applied Section 14501(c)(1) to an exceptionally analogous situation, Requirement 4 is preempted because it is not "genuinely responsive to safety concerns." 445 F.3d at 142. (Pls' Br. at 3–4.) Defendants also cite *Loyal Tire*, but they argue that the towing regulation at issue here does not relate to the price, route, or service of any motor carrier, and is not the kind of local law that Congress intended to preempt. (Defs' Br. at 5, 8.) As discussed below, we determine that Requirement 4 is preempted by Section 14501(c)(1) because: (1) it relates to services and prices of motor carriers' transportation of property, and (2) it is not genuinely responsive to safety concerns.

### A. Relation to the price, route, or service of any motor carrier

The Second Circuit has, on numerous occasions, found local licensing requirements for tow companies were preempted by Section 14501(c)(1). For example, in *Loyal Tire*, the plaintiff challenged a local law requiring all tow companies on the town's rotating tow list to maintain a tow yard within one-mile of the police department. 445 F.3d at 139, 142. The defendants argued that the requirement was not preempted because it fell under the FAAAA's safety exception. The Second Circuit explained that, to determine whether a local towing law is preempted by Section 14501(c)(1) or instead falls under the safety exception, the court must ask:

"(1) whether [the state government] has delegated to towns the power to exercise safety regulatory authority over local tow-truck operations,[5] and (2) whether the municipal law at issue in th[e] case is 'genuinely responsive to safety concerns.'" *Id.* at 142. The *Loyal Tire* court found that New York had delegated its safety regulatory authority over local tow-truck operations to its municipalities, and that the one-mile radius requirement was not genuinely responsive to safety concerns. *Id.* at 145, 148. Instead, the town enacted the geographic requirement for the purpose of excluding the plaintiff and other out-of-town tow companies from participating in the rotating tow call list. *Id.* at 148. Accordingly, the Second Circuit concluded that the requirement was precluded by Section 14501(c)(1). *Id.*

In another case, the Second Circuit likewise found New York City's tow truck licensing scheme, which prevented out-of-city tow companies from operating in the city, was preempted because it did "not ensure that the towing and storage of motor vehicles will be performed safely." *Auto. Club of New York, Inc. v. Dykstra*, 520 F.3d 210, 217 (2d Cir. 2008). The district court had previously found that the towing restrictions had a "marked interference with interstate and intrastate commerce affecting price, route or service" under Section 14501(c)(1)—a holding which the Second Circuit did not disturb on appeal. *Auto. Club of New York, Inc. v. Dykstra*, 423 F. Supp. 2d 279, 285 (S.D.N.Y. 2006) *aff'd*, 520 F.3d 210 (2d Cir. 2008); *see also Ace Auto Body & Towing, Ltd. v. City of New York*, 171 F.3d 765, 771 (2d Cir. 1999) (finding New York City's regulation of towing storage and repair facilities are preempted by Section 14501(c)(1), unless covered by an enumerated exemption).[6]

---

[5] Plaintiffs admit that New York has delegated this power to local governments. (Pls' Br. at 3.)

[6] We recognize that the Supreme Court, in finding that a vehicle owner's state-law tort claims related to the storage and disposal of his vehicle after it was towed were not preempted by Section 14501(c)(1), stated in *dicta* that the physical location of motor-carrier operations would also fall outside Section 14501(c)(1). *Pelkey*, 133 S. Ct. at 1780. We find that the Second

9

As in *Loyal Tire* and *Dykstra*, Restriction 4 is connected to the pricing, route or services of motor carriers transporting property and has a significant impact on the deregulatory purpose of the FAAAA.  As we explained, Section 14501(c)(1) preempts local regulations as long as they have "a connection with, or reference to" the rates, routes, or services of tow-truck operators' transportation of property.  *Rowe*, 552 U.S. at 370, 128 S. Ct. at 995.  By preventing two separate tow companies from operating at the same location, Requirement 4 limits the number of actors, and thus services, in the Tow List market.  Furthermore, eliminating secondary companies like Action from the market may impact not only the number of services available to consumers, but also the prices at which those services are offered.  In that way, Requirement 4 is connected to tow operators' pricing and services for the transportation of property.

Requirement 4 also has a significant impact on the FAAAA's preemption-related objectives.  Section 14501(c)(1) preempts local laws when they have any significant impact— whether negative or positive—on Congress' goal of encouraging competitive market forces. *Rowe*, 552 U.S. at 370–72, 128 S. Ct. at 995.  Requirement 4 artificially eliminates services from the market, thereby superseding Congress' intent that "competitive market forces" control the services that motor carriers provide.  Because it alters the natural balance of competitive market forces, Requirement 4 significantly impacts the deregulatory and preemptive goals of the FAAAA.

Since Requirement 4 is connected to tow operators' services and significantly impacts Congress' deregulatory aims, we find that Requirement 4 is "related to a price, route, or service of any motor carrier . . . with respect to the transportation of property" as a matter of law. 48 U.S.C. § 14501(c)(1).

---

Circuit cases discussed herein, which deal specifically with tow list and licensing requirements, are more applicable than *Pelkey*, which refers generally to zoning ordinances.

### B. Genuinely responsive to safety concerns

Although Defendants do not directly contend that Requirement 4 is responsive to safety concerns, they do cite the exception as explained in *Loyal Tire*, and they argue that the Requirement is not the type that Congress intended to preempt. (Defs' Br. at 5.) They expound that "the purpose" of Requirement 4 was to "create fairness and follow common sense." (Defs' Br. at 5.) Allowing Pistolesi to own two tow companies on the Tow List, while other owners only own one, is unfair according to Defendants. (*Id.* at 5–8.) Furthermore, they argue that if other owners also decided to add second or third companies to the list, administrative maintenance of the list would become more difficult. (*Id.*)

As we already determined, Requirement 4 regulates the services of motor carriers, which is generally preempted by federal law. Having found the Requirement is covered by Section 14501(c)(1), the only way to avoid preemption is if the Requirement is permitted by one of the exemptions enumerated in the statute. *See* 48 U.S.C. § 14501(c)(2). Defendants do not offer any evidence, or even argue, that the Requirement is responsive to safety concerns or that it falls under the other enumerated exemptions. Although we do not disagree that enforcement of Requirement 4 might promote administrative efficiency and fairness, these are not concerns of the FAAAA. *See Dykstra*, 520 F.3d at 217 (finding that protecting residents from high prices was not a regulatory justification that prevented preemption under Section 14501(c)); *Prof'l Towing & Recovery Operators of Ill. v. Box*, 965 F. Supp. 2d 981, 987 (N.D. Ill. 2013) (explaining that a local towing regulation would not be saved from federal preemption by "virtue of its reasonableness or effectiveness as a measure of combating consumer confusion or fraud"). Based on the record, no reasonable fact-finder could determine that Requirement 4 is genuinely

11

responsive to safety concerns or permitted by any other statutory exemption. Thus, we conclude that Requirement 4 is preempted by Section 14501(c)(1).[7]

### III. Severability of Requirement 4

Finally, Defendants assert that Requirement 4 is severable from the other Tow List Requirements, and thus if we find it is preempted the others should still remain. Whether a provision of local law is severable from the larger body is a question of state law. *Evergreen Ass'n, Inc. v. City of New York*, 740 F.3d 233, 243 (2d Cir. 2014); *Gary D. Peake Excavating Inc. v. Town Bd. of Town of Hancock*, 93 F.3d 68, 72 (2d Cir. 1996). Under New York law, courts generally should not invalidate entire statutes "when only portions of it are objectionable." *Id.* (quoting *Peake Excavating*, 93 F.3d at 72). "The question is in every case whether the legislature, if partial invalidity had been foreseen, would have wished the statue to be enforced with the invalid part exscinded, or rejected altogether." *Id.* (quoting *Peake Excavating*, 93 F.3d at 73); *People ex rel. Alpha Portland Cement Co. v. Knapp*, 129 N.E. 202, 207 (N.Y. 1920).

The parties agree that Requirement 4 was enacted for the unique purpose of preventing one owner from owning multiple tow companies on the Village's Tow List. (*See* Defs' Br. at 9; Pls' Br. at 4.) No other Tow List Requirement seems to share this purpose. Nor are the other Requirements in any way tied to, depended on, or otherwise impacted by Requirement 4. Under these circumstances, we must conclude that if the Board had foreseen the invalidity of Requirement 4 when they enacted it, they would have wished that the remaining Requirements still be enforced. *See Evergreen*, 740 F.3d at 243; *Peake Excavating*, 93 F.3d at 73. Therefore, Requirement 4 is severable from the other Tow List requirements.

---

[7] As Judge Seibel held in her oral ruling on summary judgment, Action is not entitled to attorneys' fees under 42 U.S.C. § 1988(b) for its preemption claim. (1/7/15 Hr'g Tr. at 37–38.) *See Loyal Tire*, 445 F.3d at 149–50.

**CONCLUSION**

Action does not have standing to challenge the Village's Tow List Requirements 1 and 3, thus claim two is dismissed as to those Requirements. Action does have standing to challenge Requirement 4, which we find is preempted by 48 U.S.C. § 14501(c)(1). Requirement 4 is hereby severed from the other Tow List Requirements and Defendants are permanently enjoined from enforcing it.

SO ORDERED:

_____
Marvin E. Aspen
United States District Judge

Dated: April 9, 2015
       Chicago, Illinois